IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:20-CR-00274-N |
| v. | |
| WILHAN MARTONO | |

## **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

ERIN NEALY COX
UNITED STATES ATTORNEY

*/s/ Rebekah Ricketts*
Rebekah Ricketts
Texas Bar No. 24074883
Siddharth Mody
Texas Bar No. 24072791
John de la Garza
Texas Bar No. 00796455
Assistant United States Attorneys
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8678
Facsimile: 214-659-8800
Email: rebekah.ricketts@usdoj.gov

# **Table of Contents**

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................. 2

    A.    Statutory Background ..................................................................... 2

    B.    Factual Background ......................................................................... 5

LEGAL STANDARD ...................................................................................... 6

ARGUMENT .................................................................................................. 7

    A.    Section 2421A Is Not Unconstitutionally Overbroad ................... 7

        1.    Facial Overbreadth Challenges Require Proof of Substantial Overbreadth Relative to the Statute's Plainly Legitimate Sweep ...... 7

        2.    The Text, Context, and History of Section 2421A Confirm That Its Terms Have Conventional Criminal-Law Meanings ................... 9

        3.    The Canon of Constitutional Avoidance Would Come Into Play If Section 2421A Could Be Read To Create Doubts About Its Constitutionality ............................................................... 15

        4.    Section 2421A Is Not Substantially Overbroad Relative To Its Plainly Legitimate Sweep ............................................... 16

    B.    Section 2421A Is Not Unconstitutionally Vague ......................... 20

        1.    The Standard for Declaring Section 2421A Void for Vagueness Is Demanding ...................................................................... 21

        2.    Section 2421A Provides Ample Fair Notice of What Is Prohibited .......................................................................... 21

    C.    The Indictment Sufficiently Charges a Violation of Section 2421A .......... 23

D.      The Indictment Sufficiently Charges Violations of the Travel Act  ........... 24

CONCLUSION ................................................................................................... 25

CERTIFICATE OF SERVICE ........................................................................... 26

## Table of Authorities

**Cases**                                                                                          **Page(s)**

*Abuelhawa v. United States*, 556 U.S. 816 (2009) ........................................................ 11, 12

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) ............................................. 23

*Clark v. Martinez*, 543 U.S. 371 (2005) ............................................................................ 15

*Ford v. State*, 262 P.3d 1123 (Nev. 2011) ........................................................................ 19

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ............................................ 17

*Hill v. Colorado*, 530 U.S. 703 (2000) .............................................................................. 22

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ................ 21, 23

*INS v. St. Cyr*, 533 U.S. 289 (2001) ................................................................................. 15

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) ................... 3, 22, 23

*Johnson v. United States*, 576 U.S. 591 (2015) ................................................................. 20

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) ................... 2

*Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999) ............... 8

*Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984).............. 8, 18

*National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) ...... 11, 13

*New York v. Ferber*, 458 U.S. 747 (1982)..................................................................... 8, 15

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
   413 U.S. 376 (1973) ....................................................................................................... 17

*Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997) ................................................... 2

*Rosemond v. United States*, 572 U.S. 65 (2014) .............................................................. 12

*State v. Ferguson*, 264 P.3d 575 (Wash. Ct. App. 2011) ................................................. 19

*United States v. Barker*, 2017 WL 4167512 (N.D. Tex. Sept. 20, 2017)......................... 24

*United States v. Crippen*, 579 F.2d 340 (5th Cir. 1978)..................................................... 7

*United States v. Gordon*, 780 F.2d 1165 (5th Cir. 1986) ......................................... 1, 7, 23

*United States v. Hagmann*, 950 F.2d 175 (5th Cir. 1991) ........................................... 24, 25

*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004) ............................................... 6

*United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921) ...................................... 20, 21

*United States v. Lawrence*, 727 F.3d 386 (5th Cir. 2013) .................................... 7

*United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018),
 *vacated and remanded*, 140 S. Ct. 1575 (2020) ................................................. 13, 14, 15

*United States v. Stanley*, 765 F.2d 1224 (5th Cir. 1985) .................................... 24

*United States v. Stevens*, 559 U.S. 460 (2010) .................................................. 17

*United States v. Thomas*, 348 F.3d 78 (5th Cir. 2003) ......................................... 7

*United States v. Williams*, 553 U.S. 285 (2008)...........................................*passim*

*Virginia v. Hicks*, 539 U.S. 113 (2003) ......................................................*passim*

*Washington State Grange v. Washington State Republican Party*,
 552 U.S. 442 (2008) ............................................................................ 7, 11, 16

*Woodhull Freedom Foundation v. United States*, 334 F. Supp. 3d 185 (D.D.C. 2018) ... 10

*Woodhull Freedom Foundation v. United States*, 948 F.3d 363  (D.C. Cir. 2020) ...*passim*

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ................................. 3, 4

**Statutes**

8 U.S.C. § 1324 ................................................................................. 14

18 U.S.C. § 371 .................................................................................. 6

18 U.S.C. § 1591 ............................................................................. 3, 4, 5

18 U.S.C. § 1595 ................................................................................. 3

18 U.S.C. § 1952(a) ....................................................................... 6, 18, 22

18 U.S.C. § 1952(b) .......................................................................... 18, 25

18 U.S.C. § 2252A.............................................................................. 16

18 U.S.C. § 2421A ................................................................................ *passim*

21 U.S.C. § 843(b) ...................................................................................... 12

47 U.S.C. § 223(a) ........................................................................................ 2

47 U.S.C. § 230 ....................................................................................... 2, 5

## Rules and Other Authorities

Fed. R. Crim. P. 7 ........................................................................................ 6

Fed. R. Crim. P. 12 ...................................................................................... 6

Pub. L. No. 87-228, 75 Stat. 498, 499 (1961) .......................................... 18

Pub. L. No. 115-164, 132 Stat. 1253 (2018) ....................................... 4, 5, 13

U.S. Senate, Staff of Permanent Subcomm. on Investigations,
  *Backpage.com's Knowing Facilitation of Online Sex Trafficking,*
  115th Congress, S. Hrg. 115-6, App. 1 (2017) ...................................... 3

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*
  247–48 (2012) ...................................................................................... 16

*Black's Law Dictionary* 76 (10th ed. 2014) ...................................... 11, 22

*Garner's Dictionary of Legal Usage* (3d ed. 2011) ................................ 22

## INTRODUCTION

Defendant Wilhan Martono moves to dismiss Count One of the Indictment, raising a host of constitutional challenges to 18 U.S.C. § 2421A, a central provision of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"). Notably, Martono does not claim that Section 2421A is unconstitutional as applied to him. Instead, he advocates a sweeping construction of the statute in support of his claims that Section 2421A is both facially overbroad and void for vagueness.

The problem with Martono's argument is that it "ignores or overreads all the key statutory terms." *Woodhull Freedom Foundation v. United States*, 948 F.3d 363, 375 (D.C. Cir. 2020) (Katsas, J., concurring in part and concurring in the judgment). Properly construed, the text, context, and history of Section 2421A all confirm that the key statutory terms have established criminal-law meanings that derive from the law of aiding and abetting. Regardless, the canon of constitutional avoidance forecloses Martono's attempt to misread Section 2421A to ban as much speech as possible. Because Martono falls far short of carrying his burden to show that Section 2421A is either substantially overbroad or void for vagueness, his constitutional arguments should be rejected.

In the alternative, Martono challenges the sufficiency of the Section 2421A count and the Travel Act counts. But these arguments are thinly-veiled attempts to graft superfluous and unsupported pleading requirements onto Rule 7. Because the 28-count Indictment in this case goes far beyond the "minimal constitutional standards" required for validity, *see United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986), these arguments also fail. Martono's motion should be denied.

# BACKGROUND

**A.     Statutory Background**

*Section 230.*  In the Communications Decency Act of 1996 (CDA), Congress prohibited the transmission of obscene and indecent speech online in order to protect minors from being exposed to sexually explicit materials.  47 U.S.C. §§ 223(a), (d); *see generally Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997).  To "preserve the vibrant and competitive free market that presently exists for the Internet," 47 U.S.C. § 230(b)(2), Congress provided in Section 230 of the CDA that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker" of content posted by users of the website.  47 U.S.C. § 230(c)(1).  Section 230 thus "marks a departure from the common-law rule that allocates liability to publishers or distributors of tortious material written or prepared by others."  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014).  Notably, Section 230 does not restrict the enforcement of federal criminal laws, including laws prohibiting obscenity and sexual exploitation of children.  *See* 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of . . . [any] Federal criminal statute.").

*The Rise of Online Sex Trafficking.*  In the nearly 25 years since Section 230 was enacted, the Internet has grown and changed substantially, and the use of online marketplace websites to facilitate illegal sex trafficking has proliferated.  According to the National Center for Missing and Exploited Children (NCMEC), between 2010 and 2015, there was an 846% increase in suspected child sex trafficking, which NCMEC found to be "directly correlated to the increased use of the Internet to sell children for

sex." *See* U.S. Senate, Staff of Permanent Subcomm. on Investigations, *Backpage.com's Knowing Facilitation of Online Sex Trafficking*, 115th Congress, S. Hrg. 115-6, App. 1 (2017), https://go.usa.gov/xmgPW (last visited Oct. 21, 2020).  A Senate investigation into the website Backpage.com ("Backpage")—a site that at one time "net[ted] more than 80% of all revenue from online commercial sex advertising in the United States"—found that Backpage had taken intentional measures to help sex traffickers avoid detection when posting commercial sex advertisements.  *See id.* at 6, 17–36.

Minor victims of sex trafficking filed suit against Backpage under 18 U.S.C. § 1595, which allows victims to bring civil actions for violations of 18 U.S.C. § 1591, the federal criminal statute that prohibits sex trafficking.  But courts dismissed these suits, holding that Section 230 afforded Backpage immunity as the "publisher" of the commercial sex advertisements.  *See, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 27 (1st Cir. 2016).  In affirming the dismissal of one such suit, the First Circuit noted that courts had interpreted Section 230(c)(1) broadly so that "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."  *Id.* at 18 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).  To the extent victims of sex trafficking wished to bring civil suits against internet publishers like Backpage that "tailor[] [their] website[s] to make sex trafficking easier," the First Circuit advised that "the remedy is through legislation"—amending Section 230—"not through litigation."  *Id.* at 29.

*FOSTA.*   In response, Congress enacted the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253 (2018), which narrows Section 230's scope and provides prosecutors with new tools to combat sex trafficking.  FOSTA set forth the "sense of Congress" that Section 230 was "never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims."  *Id.* § 2(1), 132 Stat. at 1253.  It further declared that "clarification" of Section 230 was needed to ensure that it would "not provide such protection to such websites."  *Id.* § 2(3).

FOSTA added to the criminal code 18 U.S.C. § 2421A, which proscribes "own[ing], manag[ing], or operat[ing] an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person."  18 U.S.C. § 2421A(a).  A violation of Section 2421A(a) is punishable by up to ten years in prison.  *Id.*  Section 2421A also sets forth an aggravated violation, punishable by imprisonment up to 25 years, if a person commits a violation of Section 2421A(a) and either (1) "promotes or facilitates the prostitution of 5 or more persons"; or (2) "acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of [18 U.S.C. §] 1591(a)."  *Id.* § 2421A(b).  A person is not liable under Section 2421A if "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted."  *Id.* § 2421A(e).

In addition, FOSTA narrowed the scope of immunity for interactive computer service providers by providing that Section 230 has "[n]o effect on sex trafficking law,"

and shall not "be construed to impair or limit" (1) civil claims brought under Section 1595 or (2) criminal charges brought under state law if the underlying conduct would constitute a violation of Sections 1591 or 2421A.  FOSTA § 4(a), 125 Stat. at 1254 (codified at 47 U.S.C. § 230(e)(5)).  It also defined "participation in a venture" in Section 1591, a phrase that was previously undefined, as "knowingly assisting, supporting, or facilitating a violation" of the statute.  *Id.* § 5.  Finally, FOSTA amended Section 1595 to allow State attorneys general to bring civil *parens patriae* suits for violations of Section 1591.  *Id.* § 6(a).

## B.    Factual Background

Defendant Wilhan Martono is the creator, owner, and operator of a network of websites, including cityxguide.com ("CityXGuide"), that promote and facilitate prostitution and sex trafficking across the United States.  CityXGuide and its related websites allowed pimps, prostitutes, and brothels to post hundreds of thousands of advertisements for commercial sex, earning Martono more than $21 million in illicit proceeds.  Martono built and customized the websites from start to finish, registering the domain names, purchasing the servers, and "cashing out" the gift cards uploaded to the websites in payment for the advertisements.  As one advertiser remarked in an email to Martono, CityXGuide is "[t]aking over from where Backpage left off."

Numerous minor sex trafficking victims have been identified in CityXGuide advertisements, including a 13-year-old Jane Doe recovered in North Texas in November 2019.  Law enforcement agents from across the country repeatedly contacted Martono to inform him that CityXGuide was facilitating sex trafficking and child exploitation.

Martono never responded to these inquiries or to the grand jury subpoenas served in those investigations.  Instead, he actively worked to conceal his identity, online activity, and profits, including by routing CityXGuide website traffic through an IP address in Europe, using a Virtual Private Network ("VPN") to conceal his location, posting fake contact information on the websites, and funneling his gift card proceeds through a network of business and personal bank accounts.

For this conduct, a grand jury in the Northern District of Texas returned a 28-count Indictment charging Martono with Promotion and Facilitation of Prostitution and Reckless Disregard of Sex Trafficking in violation of Section 2421A; Conspiracy to Engage in Interstate and Foreign Travel and Transportation In Aid of Racketeering Enterprises in violation of 18 U.S.C. § 371; Interstate and Foreign Travel and Transportation in Aid of Racketeering Enterprises—Facilitating Prostitution in violation of 18 U.S.C. § 1952(a)(3)(A); and Laundering of Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) authorizes motions to dismiss that raise "any defense, objection, or request that the court can determine without a trial of the general issue."  In considering a motion to dismiss an indictment, a court should "take the allegations of the indictment as true and . . . determine whether an offense has been stated."  *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense

charged and must be signed by an attorney for the government."  "[A]n indictment is

sufficient if it 'contains the elements of the offense charged and fairly informs the

defendant of the charge against which he must defend.'"  *United States v. Lawrence*, 727

F.3d 386, 397 (5th Cir. 2013) (internal citation omitted).  "It is not necessary for an

indictment to go further and to allege in detail the factual proof that will be relied upon to

support the charges."  *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)

(citations omitted); *see also United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.

1986) (describing the "minimal constitutional standards" for validity).  "Generally, an

indictment which follows the language of the statute under which it is brought is

sufficient to give a defendant notice of the crime of which he is charged."  *United States*

*v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal citation omitted).

## ARGUMENT

**A.    Section 2421A Is Not Unconstitutionally Overbroad**

### 1.    Facial Overbreadth Challenges Require Proof of Substantial Overbreadth Relative to the Statute's Plainly Legitimate Sweep

In the First Amendment context, as in others, "[f]acial challenges are disfavored."

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–51

(2008).  Such challenges "often rest on speculation," "run contrary to the fundamental

principle of judicial restraint," and "threaten to short circuit the democratic process."  *Id.*

Facial overbreadth challenges—in which a defendant asserts that a statute,

constitutionally applied to him, is nevertheless invalid because it would be

unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal citation

omitted)—are even more exceptional.  "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court."  *New York v. Ferber*, 458 U.S. 747, 767 (1982).  That third-party standing rule, to which overbreadth claims are a limited exception, reflects "'two cardinal principles' of our constitutional order: the personal nature of constitutional rights and the prudential limitations on constitutional adjudication."  *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39–40 (1999) (internal citation omitted).

The Supreme Court has thus taken care to ensure that the overbreadth exception does not "swallow" the traditional rule favoring as-applied challenges.  *See Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003).  "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the Court has recognized that overbreadth is "strong medicine" to be employed "only as a last resort."  *Los Angeles Police Dep't*, 528 U.S. at 39 (citation omitted).  Accordingly, the Court has "vigorously enforced the requirement that the statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep."  *United States v. Williams*, 553 U.S. 285, 292 (2008).  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient."  *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  *Id.* at 801.

Laws that are "not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; *see id.* ("an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed"). The party challenging the statute "bears the burden of showing, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Id.* at 122 (internal citation omitted).

### 2. The Text, Context, and History of Section 2421A Confirm That Its Terms Have Conventional Criminal-Law Meanings

Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293.

Section 2421A makes it a crime to "own[], manage[], or operate[] an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A. To make Section 2421A seem obviously unconstitutional, Martono advocates a sweeping construction of the statute. In brief, he argues that the phrase "promote or facilitate" is disjunctive, and the verb "facilitate" can mean "make easier," and therefore FOSTA prohibits "any speech or conduct that '*makes prostitution easier.*'" (Mot. at 10–14 (emphasis added).) According to Martono, Section 2421A thus proscribes "online speech about sex workers," including speech by "a national human rights organization dedicated to sexual freedom, an international human rights

organization, an advocate for sex workers, a digital library of websites, and even a

licensed massage therapist."  (Mot. at 14.)[1]

The problem with Martono's argument is that it "ignores or overreads all the key

statutory terms." *Woodhull Freedom Foundation v. United States*, 948 F.3d 363, 375

(D.C. Cir. 2020) (Katsas, J., concurring in part and concurring in the judgment).  To

begin, Section 2421A does not impose liability based on the mere intent to promote or

facilitate "prostitution" as an abstract legal or policy matter.  Rather, Section 2421A

requires intent to promote or facilitate "the prostitution *of another person*."  18 U.S.C.

§ 2421A (emphasis added).  The statute's aggravated-violation provision is similarly

directed to specific, unlawful acts of prostitution or sex trafficking with respect to

particular individuals.  *See id.* § 2421A(b) (enhancing the penalty if the violation

"promotes or facilitates the prostitution of 5 or more persons" or if the defendant "acts in

reckless disregard of the fact that such conduct contributed to sex trafficking").

Nor are the statutory verbs "promote" or "facilitate" susceptible to the "multiple

and wide-ranging meanings" that Martono suggests.  (Mot. at 10.)  To be sure, both terms

may have multiple meanings "when considered in isolation." *Cf. Woodhull Freedom*

*Foundation*, 948 F.3d at 372.  But "[i]t is a 'fundamental canon of statutory construction

---

[1] Martono's constitutional arguments are substantially derived from the plaintiffs' briefing in *Woodhull Freedom Foundation v. United States*, No. 18-CV-01552 (D.D.C.), where various individuals and organizations filed a pre-enforcement challenge to FOSTA.  The district court initially dismissed the suit for lack of Article III standing. *Woodhull Freedom Foundation v. United States*, 334 F. Supp. 3d 185 (D.D.C. 2018).  The D.C. Circuit reversed and remanded, holding that two of the plaintiffs—an advocate for sex workers and a licensed massage therapist—had established Article III standing. *Woodhull Freedom Foundation v. United States*, 948 F.3d 363 (D.C. Cir. 2020). Judge Katsas filed an opinion concurring in part and concurring in the judgment, noting that he "would reject plaintiffs' proposed construction [of FOSTA], which ignores or overreads all the key statutory terms." *Id.* at 375 (Katsas, J., concurring in part and concurring in the judgment).  Cross-motions for summary judgment are now pending in the district court.

that the words of a statute must be read *in their context* and with a view to their place in the overall statutory scheme.'"  *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (emphasis added).

In the context of the criminal law, "to 'promote' prostitution means to pander or pimp—another common offense that involves recruiting a prostitute or soliciting prospective customers."  *Woodhull Freedom Foundation*, 948 F.3d at 375 (Katsas, J., concurring in part and concurring in the judgment).  For example, *Black's Law Dictionary* defines "pandering" as follows:  "The act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute.—Also termed *promoting prostitution*."  "Pandering," *Black's Law Dictionary* (10th ed. 2014).

Similarly, in the context of Section 2421A, "facilitate" does not mean "make easier."  "[B]ecause statutes are not read as a collection of isolated phrases, 'a word in a statute may or may not extend to the outer limit of its definitional possibilities.'"  *Abuelhawa v. United States*, 556 U.S. 816, 819–20 (2009) (internal citations and alteration omitted).  As the Supreme Court has said "many times," "we presume legislatures act with case law in mind."  *Id.* at 821 (internal citation omitted).  Thus, we presume here that Congress "was familiar with the traditional judicial limitation on applying terms like 'aid,' 'abet,' and 'assist'" when it enacted FOSTA.  *Id.*  It is therefore "likely" that "Congress had comparable scope in mind when it used the term 'facilitate,' a word with equivalent meaning."  *See id.*; *compare Black's Law Dictionary* 76 (10th ed. 2014) (defining "aid and abet" as "[t]o assist or facilitate the commission of a crime")

*with id.*, at 627 (defining "facilitation" as "[t]he act or an instance of aiding or helping; . . . the act of making it easier for another person to commit a crime").

This reading finds further support in FOSTA's intent requirement, which "track[s] almost verbatim the canonical formulation for the offense of aiding and abetting." *Woodhull Freedom Foundation*, 948 F.3d at 375 (Katsas, J., concurring in part and concurring in the judgment). A defendant is liable for aiding and abetting a crime when he renders assistance "'with the intent thereby to promote or facilitate commission of the crime.'" *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (quoting 2 W. LaFave, *Substantive Criminal Law* § 13.2 (2003)). Similarly, a defendant is liable under Section 2421A when he acts with "the intent to promote or facilitate" prostitution.

Martono notes that the government advocated an expansive definition of "facilitate" in *Abuelhawa*, a case involving the scope of 21 U.S.C. § 843(b), which makes it a crime "to use any communication facility in . . . facilitating" certain drug crimes. (*See* Mot. at 10.) Whatever the merits of that position prior to *Abuelhawa*, what matters here is that the Supreme Court rejected it. Nor did it do so, as Martono suggests, based solely on "the statute's calibration of drug buyer-seller penalties." (*Id.* at 11.) Instead, *Abuelhawa* used the "traditional judicial" formulation of aiding and abetting to interpret the word "facilitate," which it termed "a word with equivalent meaning." 556 U.S. at 820. Only then did the Court look to the statute's penalty scheme as a "significant[]" supporting consideration. *See id.* at 821–22.

The history of FOSTA further refutes any suggestion that Congress used the terms "facilitate" or "promote" in an unusually broad, speech-restrictive manner. As noted

above, FOSTA was enacted in the aftermath of a series of decisions holding that Backpage was immune under Section 230 from lawsuits filed by minor victims of sex trafficking.  *See supra* at 3–4.  FOSTA set forth the "sense of Congress" that Section 230 was "never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims."  FOSTA § 2(1), 132 Stat. at 1253. Nothing about that history lends any credence to Martono's claim that Section 2421A proscribes large swaths of constitutionally protected speech.

Rather than reading the words of Section 2421A "in their context," *see National Ass'n of Home Builders*, 551 U.S. at 666, Martono simply repeats again and again that Section 2421A proscribes "speech."  (*See, e.g.*, Mot. at 2, 4, 8–10, 13–14.)  But Section 2421A does not, on its face, regulate speech at all.  Instead, Section 2421A squarely prohibits conduct—specifically, "own[ing], manag[ing], or operat[ing]" a website with the "intent to promote or facilitate the prostitution of another person."  It is therefore the type of "law or regulation that is *not* specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)," even if some applications of the law may implicate protected speech.  *See Hicks*, 539 U.S. at 124 (emphasis added).  The Supreme Court has made clear that an overbreadth challenge to such a law will "[r]arely, if ever, . . . succeed."  *See id.*

Martono also dwells at length on *United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018), *vacated and remanded*, 140 S. Ct. 1575 (2020), asserting that Section 2421A "shares the same constitutional defects" that prompted the Ninth Circuit to strike

down 8 U.S.C. § 1324(a)(1)(A)(iv) as unconstitutionally overbroad.  (*See* Mot. at 12.)
What he omits to mention is that Supreme Court unanimously vacated that decision,
holding that the Ninth Circuit "departed so drastically from the principle of party
representation as to constitute an abuse of discretion."  140 S. Ct. at 1578.

      The defendant in *Sineneng-Smith* was convicted of "encourag[ing] or induc[ing]
an alien to come to, enter, or reside in the United States, knowing or in reckless disregard
of the fact that such coming to, entry, or residence is or will be in violation of law,"
8 U.S.C. 1324(a)(1)(A)(iv), "for the purpose of commercial advantage or private
financial gain," 8 U.S.C. 1324(a)(1)(B)(i).  Sineneng-Smith challenged her conviction on
the grounds that the relevant statutes, properly construed, did not cover her conduct, and
if they did, they violated the First Amendment as applied to her.  140 S. Ct. at 1578.  But
"[i]nstead of adjudicating the case presented by the parties," the Ninth Circuit named
three *amici curiae* and invited them to brief and argue a question the defendant had never
raised:  "[W]hether the statute of conviction is overbroad . . . under the First
Amendment."  *Id.*  The Ninth Circuit "ultimately concluded, in accord with invited
*amici*'s arguments, that § 1324(a)(1)(A)(iv) is unconstitutionally overbroad."  *Id.*

      In a unanimous opinion by Justice Ginsburg, the Supreme Court vacated the
decision and soundly rebuked the court of appeals for its "takeover of the appeal,"
holding that "the Ninth Circuit's radical transformation of this case goes beyond the
pale."  *Id.* at 1581–82.  Although the Supreme Court did not reach the merits of the Ninth
Circuit's constitutional analysis, it strongly implied that the Ninth Circuit had disregarded
the Court's "repeated[]" warnings that "invalidation for [First Amendment] overbreadth

is 'strong medicine' that is not be 'casually employed.'"  *Id.* at 1581 (internal citations omitted).  Such a wildly improper decision should bear no weight in this Court's analysis.

In sum, the best reading of Section 2421A is that it requires the defendant to "own, manage, or operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute."  *Woodhull Freedom Foundation*, 948 F.3d at 375 (Katsas, J., concurring in part and concurring in the judgment).

### 3.   The Canon of Constitutional Avoidance Would Come Into Play If Section 2421A Could Be Read To Create Doubts About Its Constitutionality

At a minimum, the canon of constitutional avoidance would foreclose any attempt to read Section 2421A so expansively as to create doubts about its constitutionality.  That canon "comes into play" if a statute is "susceptible of more than one construction," even after the "application of ordinary textual analysis."  *Clark v. Martinez*, 543 U.S. 371, 385 (2005).  Thus, a court is "obligated to construe [a] statute to avoid [constitutional] problems" if it is "'fairly possible'" to do so.  *INS v. St. Cyr*, 533 U.S. 289, 300 (2001). The canon should apply with equal, if not greater, force in the exceptional context of an overbreadth claim.  *See Ferber*, 458 U.S. at 769 n.24 ("When a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction.").

The Supreme Court's decision in *United States v. Williams* is highly instructive. There, the Court did not even need to explicitly invoke the canon to reject an overbreadth argument that, like the one here, was predicated on misreading statutory language to ban

as much speech as possible.  The Court upheld the constitutionality of a federal law that made it unlawful to "advertise[], promote[], present[], distribute[], or solicit[]" child pornography.  18 U.S.C. § 2252A(a)(3)(B) (2006).  Although the verbs "'present[]'" and "'promote[]'" could "in isolation" be understood capaciously, to include "abstract advocacy," the Court rejected that construction based on textual indicators, including the statute's scienter requirement and the fact that similar laws had been upheld.  553 U.S. at 294, 299–300.  The Court thus concluded that the statute did not reach statements like "I believe that child pornography should be legal" or "I encourage you to obtain child pornography."  *Id.* at 300; *cf. id.* at 307 (Stevens, J., concurring) (the Court's construction would be "compelled by the principle that 'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality'").

This Court should likewise reject a reading that would render Section 2421A overbroad.  For the reasons set forth above, the best interpretation of the statute is as a prohibition on owning, managing, or operating a website with the intent to pander or abet the illegal exchange of sex for money, and not as a sweeping prohibition on mere advocacy.  But regardless, the canon of constitutional avoidance "militates against" a reading that would "raise serious questions of constitutionality."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247–48 (2012).

### 4. Section 2421A Is Not Substantially Overbroad Relative To Its Plainly Legitimate Sweep

Martono cannot show that Section 2421A is "substantial[ly]" overbroad relative to its "plainly legitimate sweep."  *Washington State Grange*, 552 U.S. at 449 n.6 (citations

omitted).  Indeed, Martono's own prosecution—for running the next generation of

Backpage—illustrates the "plainly legitimate" application of Section 2421A.

To the extent Section 2421A prohibits promotion and facilitation that is

accomplished partially through speech, it covers only speech that the Supreme Court has

recognized to be "undeserving of First Amendment protection."  *Williams*, 553 U.S. at

298.  The Supreme Court has long recognized that speech that constitutes "solicitation to

commit a crime," or that is "intended to induce . . . illegal activities," is speech that a

legislature may permissibly proscribe.  *Id.*; *see also Pittsburgh Press Co. v. Pittsburgh

Comm'n on Human Relations*, 413 U.S. 376, 388 (1973) ("We have no doubt that a

newspaper constitutionally could be forbidden to publish a want ad proposing a sale of

narcotics or soliciting prostitutes.").

Moreover, it "has never been deemed an abridgment of freedom of speech . . . to

make a course of conduct illegal merely because the conduct was in part initiated,

evidenced, or carried out by means of language, either spoken, written, or printed."

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).  "Many long established

criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—

criminalize speech (commercial or not) that is intended to induce or commence illegal

activities."  *Williams*, 553 U.S. at 298.  Such "prevention and punishment" of "speech

integral to criminal conduct" has "'never been thought to raise any Constitutional

problem.'"  *United States v. Stevens*, 559 U.S. 460, 468–49 (2010) (citation omitted).

In the face of Section 2421A's plainly legitimate applications, Martono resorts to a

series of hypotheticals gleaned from the *Woodhull Freedom Foundation* litigation.  (*See*

Mot. at 14.)  But he points to no "actual" prosecutions that track his theory of FOSTA's vast sweep.  *See Hicks*, 539 U.S. at 122 (citations omitted); *see Williams*, 553 U.S. at 301 (noting the "tendency of [the] overbreadth doctrine to summon forth an endless stream of fanciful hypotheticals").

To be sure, Section 2421A was only enacted in 2018.  But the Travel Act—which similarly prohibits the use of any facility of interstate commerce "with intent to . . . *promote*, manage, establish, carry on, or *facilitate* the promotion, management, establishment, or carrying on, of any unlawful activity," 18 U.S.C. § 1952(a)(3) (emphasis added)—was enacted in 1961.  And since its enactment, the Travel Act has defined "unlawful activity" to include "prostitution offenses in violation of the laws of the State in which they are committed or of the United States."  Pub. L. No. 87-228, 75 Stat. 498, 499 (1961) (codified as amended at 18 U.S.C. § 1952(b)(i)(1)).  Thus, prior to FOSTA's enactment, the government repeatedly used the Travel Act to prosecute website publishers like Backpage who acted with intent to promote prostitution and sex trafficking.  *See, e.g.*, *United States v. Lacey*, No. 4:18-CR-00422 (D. Ariz.), Dkt. 3 (Indictment) (charging executives of Backpage.com under the Travel Act); *United States v. Omuro*, No. 3:14-CR-00336 (N.D. Cal.), Dkt. 1 (Indictment) (charging publisher of MyRedBook.com under the Travel Act).

The fact that Martono can point to *no* examples of constitutionally objectionable prosecutions in almost sixty years with a comparable statute on the books is telling. Facial invalidation on overbreadth grounds is warranted only when a statute poses "a realistic danger" of chilling the speech of third parties.  *See Taxpayers for Vincent*, 466

U.S. at 801.  In *Williams*, for example, the defendant argued that the word "present[ing]" in a statute prohibiting the pandering of child pornography could be understood to criminalize even the act of turning suspected images of child pornography over to the police.  553 U.S. at 302.  But a state ban on child pornography upheld in a prior decision had included the same word, and other state laws did as well.  *Id.*  The Court noted that, notwithstanding such laws, it was "aware of no prosecution for giving child pornography to the police."  *Id.*  It could "hardly say, therefore, that there is a 'realistic danger' that [the statute] would deter such activity."  *Id.* (citation omitted).

A "realistic danger" is similarly absent here.  That is particularly true because Section 2421A, properly construed, does not criminalize the speech that Martono describes.  *See supra* at 11–15.  Facilitation laws like Section 2421A are ordinarily understood *not* to prohibit abstract or generalized advocacy of illegality.  *See, e.g.*, *Ford v. State*, 262 P.3d 1123, 1130–31 (Nev. 2011) (construing prohibition on soliciting prostitution not to reach "abstract advocacy"); *State v. Ferguson*, 264 P.3d 575, 578 (Wash. Ct. App. 2011) (construing aiding-and-abetting statute not to "forbid the mere advocacy of law violation").  Nothing in the text or context of Section 2421A even remotely suggests that it is intended to break that mold and prohibit mere advocacy.

The D.C. Circuit's observation that some protected speech "might" be implicated by Section 2421A in no way indicates that the statute should be deemed facially overbroad.  *See Woodhull Freedom Foundation*, 948 F.3d at 373.  At most, that holding suggests that limited applications of Section 2421A might implicate protected activity, even though the statute is "not specifically addressed to speech or to conduct necessarily

associated with speech." *Hicks*, 539 U.S. at 124.  Martono fails to show that this is the

"[r]are" case where such a law should be deemed facially overbroad.  *See id.*

Finally, to the extent Section 2421A could be read to cover some protected speech,

any such prosecution, were it to occur, "could of course be the subject of an as-applied

challenge." *Williams*, 553 U.S. at 302.  Invalidation on overbreadth grounds would be

justified only if Martono could show that the normal course of constitutional adjudication

is insufficient to address any chilling concerns, which he has failed to do.

**B.    Section 2421A Is Not Unconstitutionally Vague**

Martono next contends that Section 2421A is unconstitutionally vague.  (Mot. at

14.)  That argument, which is mostly recycled from his overbreadth argument, repeats

many of the same errors and is wrong for many of the same reasons.

**1.    The Standard for Declaring Section 2421A Void for Vagueness Is
Demanding**

The Due Process Clause of the Fifth Amendment bars enforcement of a criminal

statute on vagueness grounds only if it "fails to provide a person of ordinary intelligence

fair notice of what is prohibited, or is so standardless that it authorizes or encourages

seriously discriminatory enforcement." *Williams*, 553 U.S. at 304; *see also Johnson v.

United States*, 576 U.S. 591, 595 (2015) (same).

Thus, the Supreme Court has struck down a criminal statute as void for vagueness

where it is so indeterminate as to have no "ascertainable standard." *United States v.

L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921).  The Court has found that test satisfied

where a law prohibited "any unjust or unreasonable rate or charge," noting that the statute

left open "the widest conceivable inquiry, the scope of which no one can foresee." *Id.* at

89.  The Court has also struck down statutes that "tied criminal culpability to whether the

defendant's conduct was 'annoying' or 'indecent,'" as these are "wholly subjective

judgments without statutory definitions, narrowing context, or settled legal meanings."

*Williams*, 553 U.S. at 306 (internal citations omitted).

But a statute is not void for vagueness merely because "it may be difficult in some

cases to determine whether [its] clear requirements have been met." *Id.*  And a statute

that does not regulate constitutionally protected conduct may be declared "facial[ly]"

void for vagueness "only if [it] is impermissibly vague in all of its applications."

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982).

### 2.      Section 2421A Provides Ample Fair Notice of What Is Prohibited

Martono's vagueness argument recycles his lines of attack on the terms "promote"

and "facilitate."  He doubles down on the claim that "facilitate" could mean "mak[e]

. . . easier," and that "promote" could mean "support," arguing that both terms should be

given "their broadest and widest definitions."  (Mot. at 15–16.)  Martono is wrong on all

counts, for all the reasons explained above.  *See supra* at 11–12.

Curiously, Martono also professes confusion about the meaning of "prostitution,"

suggesting that the term could be read to mean "the act of debasing."  (Mot. at 16–17.)

But as noted above, Section 2421A refers not just to "prostitution" generally, but to "the

prostitution *of another person*."  18 U.S.C. § 2421A (emphasis added).  That statutory

phrase plainly refers to the "widely criminalized act involving the exchange of sex for

money."  *Woodhull Freedom Foundation*, 948 F.3d at 375 (Katsas, J., concurring in part

and concurring in the judgment); *see, e.g.*, "Prostitution," *Black's Law Dictionary* (10th ed. 2014) (defining "prostitution" as "[t]he practice or an instance of engaging in sexual activity for money or its equivalent; commercialized sex.").[2]

Martono further contends that Section 2421A's affirmative defense, which applies if "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted," 18 U.S.C. § 2421A(e), "adds yet another layer of vagueness." (Mot. at 17.) According to Martono, the affirmative defense is vague because state statutes define prostitution using slightly different language and differing degrees of specificity. (*Id.* at 17–18.) But the standard is "fair notice." *See Williams*, 553 U.S. at 304. And the fact that some state definitions specify particular sex acts and others do not hardly deprives Martono of fair notice that prostitution is "[t]he practice . . . of engaging in sexual activity for money." "Prostitution," *Black's Law Dictionary* (10th ed. 2014). To pretend otherwise is simply not credible.

Moreover, many of the same terms in Section 2421A—"promote," "facilitate," and "prostitution"—have been present in the Travel Act for over half a century. *See* 18 U.S.C. § 1952(a)(3), (b)(i)(1). These terms have never been held unconstitutionally vague in that context. Thus, "[t]he likelihood that anyone would not understand any of those common words seems quite remote." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

---

[2] Martono cites *Garner's Dictionary of Legal Usage* for his claim that prostitution can mean "the act of debasing." (Mot. at 16–17.) But that same definition makes clear that "*[i]n criminal law*," the word is associated with "taking money in exchange for sexual intercourse." *Garner's Dictionary of Legal Usage* 725 (3d ed. 2011) (emphasis added).

In sum, Martono falls far short of his burden to show that Section 2421A is impermissibly vague in *any* of its applications, much less "all" of them. *See Hoffman Estates*, 455 U.S. at 494–95. And even if his arguments could raise some doubts about Section 2421A—they do not—the same canon of constitutional avoidance discussed above would bar his misreading of the statute here. *See supra* at 15–16.

## C.   The Indictment Sufficiently Charges a Violation of Section 2421A

Martono briefly contends that, even if his constitutional challenges fail, the Section 2421A charge (Count One) is still insufficient. (Mot. at 21.)  Not so.

An indictment is "generally sufficient" if it "sets forth the offense in the words of the statute as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense." *Gordon*, 780 F.2d at 1169. Martono admits that Count One "tracks the statutory language," but claims this is "not enough" because the Indictment "does not . . . identify any specific 'persons' who were the object of prostitution." (Mot. at 21.) But there is no authority for proposition that Section 2421A requires specific victims to be identified in the indictment. Certainly there is no such requirement for the Travel Act, which proscribes substantially similar conduct.

Martono further complains that the Indictment fails to sufficiently describe the "prostitution advertisements" posted by CityXGuide, claiming that it "doesn't define what exactly they are" or "how they are materially different from ordinary and legal sex-related advertisements." (Mot. at 21–22.) These "ordinary and legal sex-related advertisements" apparently refer to the Seventh Circuit's discussion of a Backpage advertisement for a "professional dominatrix." *See Backpage.com, LLC v. Dart*, 807

F.3d 229, 234 (7th Cir. 2015) ("It's not obvious that such conduct . . . violates . . . laws against prostitution.").  Here, by contrast, the Indictment expressly alleges that CityXGuide and its related websites posted "hundreds of thousands of *prostitution* advertisements."  (Dkt. 1 ¶ 1; *see also id.* ¶¶ 3, 11, 21.)  It then describes those advertisements in great detail, including the "Intimate Activities" (*e.g.*, "Intercourse – Oral," "Intercourse – Vaginal," and "Intercourse – Anal") specified therein.  (*Id.* ¶¶ 6–7.)

The specificity afforded in the 28-count, 20-page Indictment in this case far exceeds the requirements of Rule 7.  Martono's contrary arguments are unavailing.

## D.   The Indictment Sufficiently Charges Violations of the Travel Act

Martono finally contends that the substantive Travel Act counts (Counts Three–Eleven) are "insufficient and defective."  (Mot. at 22.)  They are not.

The Fifth Circuit has expressly held that "[b]ecause the Travel Act fully and unambiguously sets out the essential elements of the offense, indictments drafted substantially in its language are sufficient."  *United States v. Stanley*, 765 F.2d 1224, 1239–40 (5th Cir. 1985).  Accordingly, this Court has rejected sufficiency challenges to Travel Act charges that generally track the language of the statute.  *See, e.g.*, *United States v. Barker*, 2017 WL 4167512, at *5–*7 (N.D. Tex. Sept. 20, 2017).  The Travel Act counts in this case track the language of the statute.  Nothing more is required.

Martono claims that the Indictment is defective because it fails to allege a "business enterprise."  (Mot. at 22–23.)  But his own citations refute this argument, making clear that an "unlawful activity" is "a term of art defined by the Travel Act." *United States v. Hagmann*, 950 F.2d 175, 184 n.20 (5th Cir. 1991); (*see* Mot. at 23 (citing

*Hagmann*).)  As relevant here, that definition includes "any business enterprise . . . involving prostitution offenses in violation of the laws of the State in which they are committed or of the United States."  18 U.S.C. § 1952(b)(i).  Thus, "by charging an unlawful activity, the [I]ndictment alleges the 'business enterprise' element of the offense."  *Hagmann*, 950 F.2d at 184.

Martono also claims that the Indictment "fails to allege that [he] performed an overt act subsequent to using an interstate facility."  (Mot. at 23.)  But the Indictment plainly alleges that Martono "*thereafter performed and attempted to perform an act* that did promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the unlawful activity."  (Dkt. 1 ¶ 35 (emphasis added).)  That is more than enough to satisfy Rule 7.  *See Hagmann*, 950 F.2d at 183 (noting that a Travel Act count "need not set forth the specific [overt] act or conduct in question").

Finally, Martono contends that the CityXGuide advertisements cited in each Travel Act count "do not plainly allege unlawful activity."  (Mot. at 24.)  But the purpose of the cited advertisements is simply to identify the dates and the context of each Travel Act violation.  The "unlawful activity" is fully alleged in preceding substantive paragraph.  (*See* Dkt. 1 ¶ 35.)

## CONCLUSION

For the foregoing reasons, Martono's motion to dismiss should be denied.

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

*/s/ Rebekah Ricketts*
Rebekah Ricketts
Texas Bar No. 24074883
Siddharth Mody
Texas Bar No. 24072791
John de la Garza
Texas Bar No. 00796455
Assistant United States Attorneys
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8678
Facsimile: 214-659-8800
Email: rebekah.ricketts@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of this document were served this day on counsel of record by electronically filing the document with the clerk of court for the U.S. District Court, Northern District of Texas using the ECF system.

*/s/ Rebekah Ricketts*
Rebekah Ricketts