IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:20-CR-00274-N |
| | § | |
| WILHAN MARTONO (1) | § | |

### DEFENDANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE DAVID C. GODBEY, UNITED STATES DISTRICT JUDGE:

COMES NOW WILHAN MARTONO, Defendant, by and through undersigned counsel in the above entitled and numbered cause, and files this Defendant's Response to Government's Response to Defendant's Motion to Dismiss (Doc. 26). Defendant moved the Court to dismiss counts in the indictment based on FOSTA and their associated forfeiture allegations because the statute is unconstitutionally overbroad and vague. Alternatively, those counts should be dismissed because the indictment fails to state the essential elements of 18 U.S.C. 2421A.

The Government responded, arguing that FOSTA is not unconstitutionally overbroad or vague and that the indictment sufficiently charges a violation of Section 2421A because it sets forth the offense in the words of the statute and there is no current authority that requires it to identify victims of the offense.

Martono files this reply, showing that the Government's arguments are without merit, and that the counts should be dismissed. Defendant's brief in support hereby follows.

Respectfully submitted,

/s/ *Peter M. Barrett*

PETER M. BARRETT
State Bar No. 00790272
**BARRETT BRIGHT LASSITER LINDER PEREZ**
3300 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
O: (214) 526-0555

        F: (214) 526-0551
        E: peter@barrettcrimelaw.com


        /s/ *Alexandria Cazares-Perez*
        ALEXANDRIA CAZARES-PEREZ
        3300 Oak Lawn Avenue, Ste 700
        Dallas, Texas 75219
        O: 214.635.3509
        F: 214.635.3509
        E: law@cazaresperez.com
        State Bar No. 24096446

    *ATTORNEYS FOR DEFENDANT*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:20-CR-00274-N |
| | § | |
| WILHAN MARTONO (1) | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RESPONSE**
**TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

TO THE HONORABLE DAVID C. GODBEY, UNITED STATES DISTRICT JUDGE:

COMES NOW WILHAN MARTONO, Defendant, by and through undersigned counsel in the above entitled and numbered case, and files this Defendant's Memorandum in Support of Defendant's Response to Government's Response to Defendant's Motion to Dismiss, and respectfully shows this Court as follows:

The Government asks that the Court deny Martono's motion to dismiss, arguing that his challenges "are disfavored," they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process." GVRS.7. It also argues that his motion should be denied because he "does not claim that Section 2421A is unconstitutional as applied to him." GVRS. 1.

Neither facial challenges nor as-applied challenges carry distinct legal meanings. The Supreme Court noted in *Citizens United v. Federal Election Commission*, 558 U.S. 310, 331 (2010), that "the distinction between facial and as-applied challenges has no 'automatic effect' on a case, and it does not 'control the pleadings and disposition in every case involving a constitutional challenge.'" The majority and dissenting justices did not even agree in *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32 (1999), which type of challenge was before them. Martono has not tried to "short-circuit the democratic process" or attempted to

"run contrary to the fundamental principle of judicial restraint." He has rightfully challenged the constitutionality of a statute that the Government is employing to deprive him of his liberty.

**The Government's Proffered Definitions Are Invalid**

The Government dismisses Martono's overbreadth and vagueness challenges, arguing that he has "ignore[d] or overread[] all the key statutory terms." GVSP.1. It insists that Section 2421A's disjunctive verbs cannot have multiple or wide-ranging meanings all because of context. GVRS.10–11. Not context in relation to FOSTA's overall statutory scheme, but context only to criminal law in general. GVRS. 11 ("In the context of criminal law . . ."). Promote, it says, cannot be overbroad because in the world of criminal law it means to pander or pimp. GVRS.11. It says this not based upon any survey of criminal statutes, federal case law, or even state case law, but based upon a one-judge concurrence in *Woodhull Freedom Foundation v. United States*, 948 F.3d 363, 375 (D.C. Cir. 2020) (Katsas, J., concurring in part and concurring in judgment). Next, it says facilitate cannot mean to make easier because of an unstated presumption that Congress must have acted with criminal case law in mind. GVRS.11. The word must mean aid, abet, and assist because that is how the *Abuelhawa*[1] Court construed it in 21 U.S.C. 843(b). GVRS.12. Relying on that one-judge Woodhull Freedom concurrence, it goes on to argue that this must be right because FOSTA's intent requirement tracks the canonical formula for aiding-and-abetting liability.[2] Based on these premises, it arrives at this construction of the statute: "a defendant is liable under Section 2421A when he acts with 'the intent to pro-

---

[1] *Abuelhawa v. United States*, 556 U.S. 816 (2009).
[2] 18 U.S.C. 2(a) does not just use "aid" and "abet," but several verbs to convey aiding-and-abetting liability: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."

mote or facilitate' prostitution." GVRS.12. Which is nothing but a regurgitation of the statutory language with the element of another person left out.

First, the argument that facilitate does not or cannot mean to make easier is untenable. The Fifth Circuit, in fact, has defined it this way in several cases. See, e.g.s., *United States v. Shiu Sun Shum*, 496 F.3d 390, 392 (5th Cir. 2007) (holding that to "substantially facilitate" under 8 U.S.C. 1324 means to make an alien's illegal presence in the United States substantially "easier or less difficult"); *United States v. Pechora*, 693 F.2d 421, 424 (5th Cir. 1982) (holding "it is enough that the interstate travel or the use of interstate facilities makes easier or facilitates the unlawful activity"); *United States v. Jones*, 642 F.2d 909, 913 (5th Cir. 1981) ("As long as the interstate travel or use of the interstate facilities and the subsequent facilitating act makes the unlawful act easier, the jurisdictional requisites under § 1952 are complete."); *United States v. Broussard*, 987 F.2d 215, 224 n. 6 (5th Cir. 1993) (holding that district court's instruction defining "to facilitate" meant "to make easier to commit" was adequate).

The Government's reliance on *Abuelhawa v. United States*, 556 U.S. 816 (2009) to define Section 2421A's facilitate as aid, abet, and assist is flawed. It argues that the *Abuelhawa* Court looked to the "traditional judicial" formulation of aiding and abetting to interpret facilitate, and only then found that the statute's penalty scheme was a significant supporting consideration. GVRS.12. It was the other way around. The Court determined that facilitate should be interpreted narrowly using the traditional formulation of aiding and abetting because "any broader reading of 'facilitate' would for practical purposes skew the congressional calibration of respective buyer-seller penalties." *Id*. at 821–22. FOSTA does not have a similar penalty calibration scheme, and the Government has not provided any authority demonstrating that the verb has been similarly narrowed in any other instance. It is noteworthy that courts continue to give it a

broader meaning than aid, abet, and assist, including to make easier, post-*Abuelhawa*. *See United States v. Desposito*, 704 F.3d 221, 228 n. 8 (2d Cir. 2013); *United States v. Owens*, 641 F. App'x 949, 951 (11th Cir. 2016) (per curiam); *United States v. Schelblich*, 788 Fed. Appx. 305, 309 (6th Cir. 2019) (construing section 2K2.1(c) of the United States Sentencing Guidelines); *United States v. Lindberg*, No. 5:19-CR-00022-MOC-DSC, 2020 U.S. Dist. LEXIS 138461, at *14 (W.D.N.C. Aug 4, 2020); *In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 564 (S.D.N.Y. 2011). The Government's proposed definition is also unpersuasive because aiding and abetting is not a separate criminal offense, but an alternative charge in every indictment, whether implicit or explicit. *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992). Congress knows how to write aiding-and-abetting laws. It uses many more verbs and gerunds than what are in FOSTA. *See*, e.g.s., 26 U.S.C. 7206(2)-(3) (fraud and false statements under internal revenue laws); 21 U.S.C. 841(h) (dispensing controlled substances online); 15 U.S.C. 80b-9(f) (SEC regulation of investment companies and advisors); 15 U.S.C. 78t (regulation of securities trading); 7 U.S.C. 13c (regulation of commodity exchanges); 12 U.S.C. 1847(b)(5) (penalties for violating bank holding company regulations); 12 U.S.C. 1786(k)(2)(K), (m) (regulation of insured credit unions). Significantly, none of these statutes use facilitate to describe aiding and abetting.

The Government's definitional scheme for promotes is also unfounded. Its rationalization that promotes must mean to pander or pimp is not supported by any legal authority save for *Woodhull Freedom's* one-judge concurrence.[3] And Judge Katsas's definition does not stem from

---

[3] The Government's response relies extensively on *Woodhull Freedom's* concurrence, but fails to constructively address the opinion of the *Woodhull Freedom* Court.

any case authority, but is a reverse engineering of Black Law Dictionary's definition of pander.[4] Neither the Government nor Judge Katsas explain why Congress did not use pander or pimp in FOSTA if that is what it actually intended to prohibit.

Promote no doubt involves speech, and not just the unprotected kind. The Fourth Circuit recently faced a constitutional challenge to promotion in the Anti-Riot Act in *United States v. Miselis*, 972 F.3d 518, 537 (4th Cir. 2020), and could not escape the fact that it necessarily includes abstract advocacy. The court examined the verb string of to organize, promote, [or] encourage and found that promote failed to bear the constitutionally required relation between speech and lawlessness. *Id*. at 536. It rejected the Government's argument that it was readily susceptible of a limiting transactional construction under *Williams*[5] or that it could be constrained to an artificial definition of criminal speech. *Id*. It explained that it was best understood to mean to support or encourage something, or to advance, or further something by helping to . . . introduce it and therefore occupied an "overinclusive position on the continuum of relation between advocacy and action." *Id*. Cf. *Planned Parenthood Ass'n of Hidalgo Cty, Texas, Inc. v. Suehs*, 692 F.3d 343, 347 (5th Cir. 2012) (regulators defined "promote" as to "[a]dvocate[] or popularize[], by, for example, advertising or publicity). Notably, it observed that it did not have the authority to rewrite the law to conform it to constitutional requirements. *Id*., citing *United States v. Stevens*, 559 U.S. 460, 481, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) ("We will not rewrite a . . . law to conform it to constitutional requirements."). Yet this is what the Government is asking the Court to do here with its pimp, pander, and abet definitions. See GVRS. 15 ("In sum, the best reading of Section 2421A is that it requires the defendant to 'own, manage, or

---

[4] Black's Law Dictionary, ironically, defines facilitate as to make the occurrence of (something) easier; to render less difficult. See *Woodhull Freedom*, 948 F.3d at 372.
[5] *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008).

operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply advocate for, education, or provide general assistance to persons who prostitute."). The Government's argument that Martono can point to "no 'actual' prosecutions that track his theory of FOSTA's vast sweep" is of no importance. (How could he if he is claiming the statute is facially unconstitutional?) It is eminently more significant that the Government cannot identify a single case or prosecution that has tracked its "best interpretation"[6] or otherwise adopted its tortured definitions.

The Government professes curiosity over Martono's claims of vagueness regarding the meaning of prostitution. GVRS.21. The vagueness is clear. The word is not defined in the statute. State Attorneys General and countless private litigants are not bound by the Government's proffered definition or each other's for that matter. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (explaining that a vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application). And the Government's proffered definition of "exchange of sex for money" breaks the rule that a single use of a statutory phrase must have a fixed meaning across a statute because prostitution in FOSTA's affirmative defense must necessarily derive its definition from the jurisdiction where the alleged offense occurred. See *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).

**The Travel Act Is Not Controlling**

The Government repeatedly references the Travel Act in its response and encourages the Court to rewrite FOSTA to conform to constitutional standards because FOSTA supposedly pro-

---

[6] The Government in *Woodhull Freedom* would not commit itself a "best interpretation." *See Woodhull Freedom*, 948 F.3d at 373 (observing that the Government has not disavowed expanded prosecutions in the future).

hibits substantially the same conduct. GVRS.18, 22, 23. Its analogizing of FOSTA to the Travel Act is misplaced.

First, the Travel Act defines illegal activity as state-defined illegal acts, in this case, "prostitution offenses in violation of the laws of the State in which they are committed in the United States, including but not limited to Texas Penal Code § 43.02". IND.13. FOSTA does not require the violation of specific laws. By its plain terms, any online speech that can be said to promote or facilitate prostitution, even abstractly, creates a risk of prosecution. Speech that condemns prostitution, on the other hand, doesn't come under purview.

Second, the two statutes employ markedly different terms. The Travel Act's string of verbs suggests a transactional limitation. *See Williams*, 553 U.S. at 294–95. Transactional words provide the necessary element of participation or direct engagement in the transaction. They are necessary to ensure "the statute penalizes speech that accompanies or seeks to induce" the criminal conduct and to exclude the "multiple and wide-ranging meanings" that terms like promote can have when standing alone. *Id.* FOSTA lacks the Travel Act's list of constraining verbs so its reach is not as similarly limited as a result. See *Lomax*, 140 S. Ct. at 1725 ("[T]his Court may not narrow a provision's reach by inserting words Congress chose to omit."); see also *United States v. Corley*, 556 U.S. 303, 314 (2009). FOSTA is therefore not transactional in nature and does not require conduct that is in some way participatory in the offense. *Woodhull Freedom Found.*, 948 F.3d at 372.

**FOSTA Prohibits Protected Speech**

The Government argues that FOSTA "squarely prohibits conduct," that it doesn't proscribe speech at all. GVRS.13. But it cannot avoid the First Amendment by recasting essential speech processes as conduct. *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019)

("[s]peech is not conduct just because the government says it is"). The creation and dissemination of information is speech within the meaning of the First Amendment. *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011). Laws like FOSTA that target a particular medium regulate speech regardless how the Government may characterize them. *See, e.g., Near v. Minnesota*, 283 U.S. 697, 720 (1931) ("Characterizing the publication as a business, and the business as a nuisance, does not permit an invasion of the constitutional immunity against restraint."); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (tax on ink and paper "burdens rights protected by the First Amendment"). Courts have uniformly recognized that "online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms." *See, e.g.s., La 'Tierjira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991–92 (S.D. Tex. 2017); *Jian Zhang v.* baidu.com *Inc.*, 10 F. Supp. 3d 433, 438–39 (S.D.N.Y. 2014) (online platforms "are engaging in fully protected First Amendment expression—'[t]he presentation of an edited compilation of speech generated by other persons'"); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (First Amendment protects decisions by intermediaries).

FOSTA targets speech based on its "message" and "function." *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). *See also Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991) (law restricting speech about crime was content based). It focuses only on content, criminalizing anything online that can be said to promote or facilitate prostitution. This is nothing less than content-based regulation. *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 811–12 (2000). It discriminates based on the Government's viewpoint, which is a blatant and egregious form of content discrimination. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *True the Vote, Inc. v. IRS*, 831 F.3d 551, 560

(D.C. Cir. 2016). There is no support for the Government's premise that regulation of a medium of communication is not a regulation of speech. To be sure, the Government's argument is not even borne out by its own authority. Judge Katsas concurred in *Woodhull Freedom* that general website information about online payment processors could support an inference of intent to promote or facilitate the prostitution of another. *Woodhull Freedom*, 948 F.3d at 375–76. The statute necessarily encompasses expression and lacks a clear nexus to unlawful conduct or clearly defined unprotected speech and is therefore unconstitutional. *See Miselis*, 972 F.3d at 535–36.

**The Government Shrugs Off a Proper Analysis**

The Government dismisses Sineneng-Smith[7] out of hand, arguing that the case should bear no weight with this Court because the Supreme Court vacated the decision. GVRS.15. The original motion demonstrated by citation that the Ninth Circuit's original decision had been vacated and the case remanded for further proceedings. The Government concedes that the Supreme Court did not reach the merits. Its concern was the invited amici taking over the case, not the appellate court's constitutional analysis. The Government should not have shrugged it off, painting it as a "wildly improper decision." It should have taken the opportunity to deal squarely with the court's constitutional analysis because that is the exact analysis this Court is required to do here.

**The Indictment Does Not Sufficiently Charge a 2421A Violation**

The district court in Woodhull Freedom opined that the statute's reference to the prostitution of another person is plainly calculated to ensnare only specific unlawful acts with respect to a particular individual. *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 200

---

[7] *United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018), vacated and remanded on other grounds, 2020 U.S. LEXIS 2639 (U.S. May 7, 2020).

(D.D.C. 2018). The court added that Section 2421A requires the Government to show not just that a defendant was aware of a potential result of the criminal offense, but that the defendant intended to "explicitly further" a specified unlawful act. *Id.* at 201, citing *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999). The Government admits that under its construction the statute is directed to specific, unlawful acts of prostitution or sex trafficking with respect to particular individuals. GVRS.10 (emphasis supplied). But it says that it is not required to identify the individuals who constitute the of another person element in the indictment because "there is no authority for [that] proposition." GVRS.23. Its construction, however, dictates that Martono formed the specific intent to explicitly further a specified lawful act against a particular individual, and five particular individuals for the aggravated-violation provision.[8] GVRS.10. Under current law, the Government must show that the targeted speech is for the "sole immediate purpose" of furthering a specific crime. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498–502 (1949). This means that it must prove both that (1) a defendant had knowledge of specific content that is integrally related to a particular crime and (2) specifically intended to bring about the result. *Miselis*, 972 F.3d at 535 ("the government must at a minimum prove . . . the defendant acted with specific intent to engage in unprotected speech or conduct"). It is not enough that the Government obliquely alleges that "CityXGuide and its related website posted 'hundreds of thousands of prostitution advertisements.'"[9] The indictment acknowledges that third parties posted the website content yet there are no allegations that Martono engaged in

---

[8] In *Woodhull Freedom*, the Government endorsed this construction. *Woodhull Freedom*, 948 F.3d at 372–73, citing *Woodhull Freedom*, 334 F. Supp. 3d at 200.

[9] The phrase "prostitution advertisement" is conclusory. The Government argues that prostitution is "the illegal exchange of sex for money," yet none of the advertisements contained in the indictment mention money.

*Lacey*-type conduct[10] regarding any particular advertisement or individual. Martono's awareness of a potential result of the criminal offense is not sufficient for a conviction under the Government's construction of FOSTA. He had to have to have acted on the specific intent to explicitly further a criminal act against a specific individual, i.e., the prostitution of another person. The indictment identifies no such individual or individuals. Rule 7 and the statutory elements of 2421A require that the particular individual or individuals involved in the offense be identified. The absence of the identity of another person does not provide sufficient notice to Martono to allow him to prepare his defense. It also fails to protect him from subsequent prosecution for the same crime.

**Conclusion**

Based upon these premises, the Court should grant Defendant's motion to dismiss.

Respectfully submitted,

/s/ *Peter M. Barrett*

PETER M. BARRETT
State Bar No. 00790272
**BARRETT BRIGHT LASSITER LINDER PEREZ**
3300 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
O: (214) 526-0555
F: (214) 526-0551

---

[10] The Lacey indictment shows that the defendants were not charged based upon a vicarious liability theory for the passive posting of third parties' online advertisements. *United States v. Lacey*, 423 F. Supp. 3d 748, 753–56 (D. Ariz. 2019). The indictment described conduct intended to further the website's users' ability to sell children and others for sex, including editing users' advertisements to allow them to "evade detection" as solicitations for sex with children, adopting policies to artificially limit automatic warnings when customers used search terms indicating they wanted to buy children for sex, and instructing moderators not to send alerts of potential child exploitation to the National Center for Missing and Exploited Children. It also alleged affirmative conduct such as the defendants removing phone numbers, email addresses, IP addresses, and metadata from sex ads to frustrate the efforts of law enforcement, and deliberately removing advertisements posted by an anti-trafficking group and law enforcement agencies seeking to aid sex trafficking victims. *Id*.

E: peter@barrettcrimelaw.com

/s/ *Alexandria Cazares-Perez*
ALEXANDRIA CAZARES-PEREZ
3300 Oak Lawn Avenue, Ste 700
Dallas, Texas 75219
O: 214.635.3509
F: 214.635.3509
E: law@cazaresperez.com
State Bar No. 24096446

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

Undersigned Counsel hereby certifies that on November 23, 2020, a true and correct copy of the foregoing Defendant's Response to Government's Doc. 26 and Memorandum in Support were served upon all parties entitled to notice via the U.S. Northern District CM/ECF system.

/s/ *Peter M. Barrett*
PETER M. BARRETT